83

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 98-41533
Summary Calendar

---

U.S. COURT OF APPEALS
**FILED**
NOV 11 1999
CHARLES R. FULBRUGE III
CLERK

AQUILINO PEREZ and Maria Conseca Perez,
Individually and as Next Friends of
Silverio Perez, Elifonsa Perez, Maria
Del Carmen Perez, Jose Perez and Maria
Guadalupe Perez,

                             Plaintiffs-Appellees,

United States District Court
Southern District of Texas
FILED

DEC 07 1999

Michael N. Milby
Clerk of Court

versus

CITY OF HARLINGEN ET AL.,

                             Defendants,

CITY OF HARLINGEN; JAMES JOSEPH
SCHOEPNER, Individually and in his
official capacity as Police Chief of the
City of Harlingen Police Department;
TIMOTEO FLORES, Individually and in his
official capacity as a Peace Officer for
the City of Harlingen Police Department;
VERONICA GONZALEZ, Individually and in
her official capacity as a Jailer for
the City of Harlingen Police Department,

                             Defendants-Appellants.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. B-96-CV-075

---

Before DAVIS, EMILIO M. GARZA and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Aquilino Perez ("Perez") and his wife Maria Conseca Perez

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

filed suit in a Texas state court in 1995 on behalf of themselves and five of their children, alleging that Perez was injured through the defendants' negligence when he was a detainee at the Harlingen City Jail. The Perezes later amended their petition, invoking 42 U.S.C. § 1983 and alleging that the defendants violated Perez's constitutional rights. The defendants removed the case to the district court and, in due course, filed motions for summary judgment. Harlingen Police Chief James Joseph Schoepner and Veronica Gonzalez, a jailer, each asserted qualified immunity as a defense. The district court denied all of the motions for summary judgment, and the defendants filed a notice of appeal. Only Gonzalez and Schoepner make arguments on appeal. Insofar as the other defendants are appealing the denial of summary judgment, the appeal is DISMISSED as to them.

Gonzalez and Schoepner have filed a motion requesting that two Perez children who were not named in the original complaint be made a part of the appeal. The district court permitted the participation of the two children in the same order that it denied the defendants' motions for summary judgment. Accordingly, we view the two children as participants to the appeal to the extent that any of the children are parties to the litigation. The motion is DENIED as unnecessary.

In an appeal from the denial of summary judgment, we review the record de novo. <u>Nerren v. Livingston Police Dep't</u>, 86 F.3d 469, 472 (5th Cir. 1996). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1992); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986). Because the district court gave no reasons for denying the motions for summary judgment, we "must 'undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997) (citation omitted).

Although there is not ordinarily appellate jurisdiction to review immediately the denial of a motion for summary judgment, there is an exception when the motion was predicated on qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 525, 530 (1985). The district court's denial is reviewable to the extent it turned on issues of law, not fact. Id. at 528. Thus, although we lack jurisdiction to review a district court's determination that there exist genuine issues of fact, we do have jurisdiction to review a determination that the issues of fact are material. Colston v. Barnhart, 146 F.3d 282, 284 (5th Cir.), cert. denied, 119 S. Ct. 618 (1998). We conduct a de novo review of the district court's conclusions about materiality. Lemoine v. New Horizons Ranch and Ctr., Inc., 174 F.3d 629, 634 (5th Cir. 1999).

Whether a public official is qualifiedly immune depends on two inquiries. Harris v. Victoria Indep. Sch. Dist., 168 F.3d

216, 223 (5th Cir. 1999). First, a defendant is entitled to qualified immunity when a plaintiff has failed to allege the violation of a clearly established constitutional right. Id. Second, a defense of qualified immunity will succeed if the defendant's conduct was objectively reasonable at the time in light of clearly established law. Id.

Gonzalez concedes that she had clearly established constitutional duties not to be deliberately indifferent to either any physical abuse committed against Perez by another officer in her presence or to Perez's serious medical needs. She insists, however, that her actions were objectively reasonable in light of these duties.

There is evidence creating a genuine issue of material fact that Gonzalez failed to take reasonable measures to intervene to protect Perez from physical abuse by another officer, Timoteo Flores. Although she argues that there is no evidence that she was even present during any abuse, Perez testified that a man and a woman escorted him to a cell. He testified that the woman angrily screamed and that the male officer pushed him into a concrete wall. This testimony was partially corroborated by another prisoner. Gonzalez herself testified that she escorted Perez, after he was booked, to a cell. Viewing the evidence in the light most favorable to the plaintiffs, we hold that there is a genuine issue of material fact as to whether Gonzalez was present during abuse of Perez.

There is also evidence that Gonzalez was present when Officer Flores picked Perez off the ground and threw him into a

cell, causing him to become unconscious. Although Gonzalez's version of events differs from Perez's, we note that, even under her telling, she was present when the officer carried Perez into a cell. There is a genuine issue of material fact regarding whether Gonzalez was present and failed to intervene during the time that Officer Flores allegedly harmed Perez.

Gonzalez also argues that she acted reasonably at all times, even though she did not obtain medical help for Perez. As noted, there is evidence that Gonzalez was present when Flores physically abused Perez. In addition, Gonzalez herself testified that Perez hit his head on the wall with great force. She testified that he did not answer after he hit his head and shook his head from left to right when asked if he was all right. Perez testified that he was unable to move throughout the night and called out whenever he heard a jailer walking down the hallway. Gonzalez testified that she made checks on the prisoners every 30 minutes through the night. In light of all this, we hold that there is a genuine issue of material fact as to whether Gonzalez was deliberately indifferent to Perez's serious medical needs.

Chief Schoepner argues that his conduct was objectively reasonable. He concedes that Perez's claims of inadequate training and supervision do state possible violations of clearly established constitutional rights. He argues, however, that none of his actions could have been unreasonable because there had never been any prior complaints against Gonzalez or Flores.

A police chief can be held liable under § 1983, but a

plaintiff must show a connection between the chief's own conduct and any constitutional violation. Baker v. Putnal, 75 F.3d 190, 199 (5th Cir. 1996). "The plaintiff must show that: (1) the police chief failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference." Id.

Gonzalez testified that she was hired as a jailer less than two months before the incident with Perez occurred. Her only training consisted of a 40-hour class on jails. The class did not include any instruction on the handling of arrestees, improper uses of force, or on the duty to provide care to prisoners with serious needs. She testified that she received no training at all from the City or Chief Schoepner. She testified that she had never attended any meetings of the jail staff. She testified that she had never been issued and had not read any job description.

Accordingly, there is a genuine issue whether Chief Schoepner failed to train and supervise Gonzalez in her duties as a jailer. If Perez's story is proved, Gonzalez was deliberately indifferent to the physical abuse he received and to his serious medical needs. Because Gonzalez received no training in these areas, it could reasonably be determined that there was a "causal connection" between the failure to train and any constitutional violation. Baker, 75 F.3d at 199. In addition, we believe it could reasonably be determined that Schoepner's failure to train

Gonzalez "amounted to gross negligence or deliberate indifference." Id. See also Farmer v. Brennan, 511 U.S. 825, 847 (1994) (defining deliberate indifference as "know[ing] that inmates face a substantial risk of serious harm and disregard[ing] that risk by failing to take reasonable measures to abate it"). Schoepner was not entitled to judgment as a matter of law on this claim.

The Perezes have not alleged a similar failure to train or supervise Officer Flores. They argue that conduct unrelated to the use of force and documented in Flores's personnel file suggests that Schoepner should have more closely supervised the officer. Even if there were some failure to train Flores in these unrelated areas, though, the Perezes have not alleged the required "causal connection" between Schoepner's failure to train in these areas and Flores's alleged use of excessive force. Baker, 75 F.3d at 199. Because the plaintiffs have not pointed to evidence of a genuine issue for trial, Schoepner was entitled to judgment as a matter of law as to this claim.

Schoepner also argues that he was entitled to qualified immunity as to the Perezes' claim that he implemented an unconstitutional policy or custom of tolerating the use of excessive force. The Perezes did not rely on any express policy. Instead, they alleged three prior incidents that, they argue, indicate Schoepner's tolerance of excessive force. We have reviewed the Perezes' allegations, and we conclude that they have failed to allege any "persistent, widespread practice" in the

police department.[1] Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). One of the incidents did not involve the use of force on an arrestee, and, in another, the offending officer was terminated by Schoepner.

In sum, the district court properly held that Gonzalez was not entitled to qualified immunity from the Perezes' claims. The court also correctly held that Chief Schoepner was not entitled to qualified immunity from the Perezes' claim that he failed to properly train and supervise Gonzalez. As to these claims, there are genuine issues of material fact, making the district court's denial of summary judgment unappealable. See Colston, 146 F.3d at 284. However, we hold that the district court erred in denying Schoepner qualified immunity from the Perezes' claim that he failed to train or supervise Officer Flores. Finally, the district court erred in holding that Schoepner was not qualifiedly immune from any claim that he implemented an unconstitutional policy or custom of tolerating the use of excessive force. Accordingly, we DISMISS the appeal in part, REVERSE in part, and REMAND for further proceedings.

MOTION DENIED; DISMISSED IN PART, REVERSED IN PART, and REMANDED.

---

[1] As the Perezes observe, we held in Grandstaff v. City of Borger, Tex., 767 F.2d 161, 171 (5th Cir. 1985), that postincident conduct by a policymaker can, in an appropriate circumstance, be evidence of the policymaker's unlawful preincident practice. There, "the subsequent acceptance of dangerous recklessness by the policymaker tend[ed] to prove his preexisting disposition and policy." Id. This case is distinguishable, however. Unlike Grandstaff, even if proved, this case did not involve egregious misconduct by so many officers that a preincident policy could reasonably be inferred from the policymaker's reaction to the incident itself.